UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CORRINA RUTH MULLINS,                           Case No. 1:15-cv-311
    Plaintiff,                                   Dlott, J.
                                                 Litkovitz, M.J.

    vs.

COMMISSIONER OF                                 **REPORT AND**
SOCIAL SECURITY,                                **RECOMMENDATION**
    Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply

memorandum (Doc. 20).

**I. Procedural Background**

Plaintiff filed an application for DIB in March 2012, alleging disability since December

12, 2010, due to a bipolar disorder and depression. Plaintiff's application for DIB was denied

initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de*

*novo* hearing before administrative law judge (ALJ) Gregory G. Kenyon. Plaintiff and a

vocational expert (VE) appeared and testified at the ALJ hearing. On January 29, 2014, the ALJ

issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the

Appeals Council was denied, making the decision of the ALJ the final administrative decision of

the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §

423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-

(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the

sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

2

can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff met] the insured status requirements of the Social Security Act through December 31, 2014.

2. The [plaintiff] has not engaged in substantial gainful activity since December 12, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The [plaintiff] has the following severe impairments: a lumbar strain, degenerative joint disease of the right knee, a bipolar disorder, an anxiety disorder/obsessive compulsive disorder, and a personality disorder (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following limitations: she can frequently crouch, crawl, kneel, stoop, balance, and climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can never work around hazards such as unprotected heights or dangerous machinery. Mentally, the [plaintiff] is limited to performing unskilled, simple repetitive tasks. She is limited to occasional brief contact with co-workers and supervisors and no public contact. She cannot perform jobs involving teamwork or tandem tasks. She cannot perform work requiring sales transaction (sic) or negotiations. She cannot perform work requiring fast-paced production work or strict quotas. She is limited to jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] . . . 1986 and was 24 years old, which is defined as

---

[1] Plaintiff's past relevant work was as a home health aide, a medium level job, and a cashier, a light level job. (Tr. 19-20).

a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 12, 2010, through the date of [the ALJ's] decision (20 CFR 404.1520(g)).

(Tr. 13-21).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a two-fold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled occupations such as industrial cleaner (2,710 jobs regionally and 2,097,000 jobs nationally), washer (510 jobs regionally and 288,100 jobs nationally), and packer (770 jobs regionally and 660,670 jobs nationally). (Tr. 20-21).

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff alleges that the ALJ erred in weighing the psychological opinion evidence. (Doc. 14). First, plaintiff alleges that the ALJ did not explain his reasons for crediting the opinions of the state agency reviewing psychologists over the opinions of the examining psychologists. Second, plaintiff alleges that the ALJ gave clearly erroneous and unsupported reasons for discounting the opinions of the two examining psychologists. Third, plaintiff alleges that the ALJ apparently failed to evaluate a Medical Functional Capacity Assessment submitted by an examining psychologist with his report.

### 1. Weight to the medical opinion evidence

Plaintiff alleges that the ALJ improperly weighed the medical opinion evidence related to her mental impairments. (*Id*. at 6-17; Doc. 17). Specifically, plaintiff contends that the ALJ improperly discounted the opinions of examining clinical psychologists Drs. Albert E. Virgil,

Ph.D., and Joseph M. Carver, Ph.D., and he apparently failed to consider a Medical Functional Capacity Assessment Dr. Carver submitted with his report.

The Commissioner contends that the ALJ reasonably credited the opinions of the non-examining state agency psychologists that plaintiff could occasionally interact with co-workers over Dr. Virgil's opinion that plaintiff probably could not tolerate supervision. (Doc. 19). The Commissioner further alleges that the ALJ reasonably decided to credit the opinions of the non-examining psychologists over the assessment of Dr. Carver, who estimated the duration of plaintiff's limitations to be no longer than 11 months. The Commissioner alleges that even if the ALJ erred in weighing Dr. Carver's opinion, the error was harmless because the limitations Dr. Carver assessed were not of sufficient duration to qualify as disabling.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source

who has not examined the claimant. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 514 (6th

Cir. 2010); 20 C.F.R. § 404.1527(c)(1); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th

Cir. 2007). When deciding what weight to give a non-treating source's opinion, the ALJ must

consider the medical specialty of the source, how well-supported by evidence the opinion is, how

consistent the opinion is with the record as a whole, and other factors which tend to support or

contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Wilson*, 378 F.3d at 544. Because a non-

examining source has no examining or treating relationship with the claimant, the weight to be

afforded the opinion of a non-examining source depends on the degree to which the source

provides supporting explanations for his opinions and the degree to which his opinion considers

all of the pertinent evidence in the record, including the opinions of treating and other examining

sources. 20 C.F.R. § 404.1527(c)(3).

Consultative examining psychologist Dr. Virgil evaluated plaintiff and prepared a report

dated April 25, 2012. (Tr. 214-19). Plaintiff informed Dr. Virgil that she had been treated at

Shawnee Mental Health Center for six months in 2009 and had been prescribed medication, but

she had discontinued the medication because she did not like the way it made her feel. (Tr. 215,

216). She was not taking any prescribed medications and was not in treatment at the time of the

evaluation. (*Id.*). When asked why she was not working, plaintiff responded: "I hate people.

When they come in I have to stop myself from doin[g] things . . . I can't handle bein[g] around a

[lot of] people." (Tr. 216). Plaintiff reported that she is married and has two children. She

reported that she cares for the children, including changing her daughter's diaper and making her

a bottle; she does household chores and cooks; she is able to shop independently but she

"choose[s] not to"; her hobbies are smoking and going on Facebook; and she has friends but does

not go out of her way to talk to them. (*Id.*). Plaintiff reported being depressed since she was

about 16 years old, having difficulty sleeping, and experiencing periods of crying, occasional

suicidal ideation, and mood swings, including periods of elation, exhilaration, and "ill afforded

shopping sprees." (Tr. 217). She also described episodes of anxiety during which she feels like

she cannot breathe and her heart races. Plaintiff related an incident that had occurred a few

weeks earlier when she got into an argument and was escorted out of a hospital by security

guards. (*Id.*). Dr. Virgil described plaintiff's mood as labile at the time of the session, ranging

from depressed to hypomanic, and mildly anxious with some motor agitation and knuckle

cracking. (*Id.*).

Dr. Virgil diagnosed plaintiff with bipolar disorder, anxiety disorder, obsessive compulsive

disorder (OCD), and personality disorder NOS. (Tr. 218). He assigned her a GAF score of 52.[3]

Dr. Virgil opined that plaintiff did not appear to exaggerate her symptoms or "otherwise respond

in a manner suggesting self report unreliability." (*Id.*). He concluded that plaintiff's clinical

presentation and report indicated that she suffers from bipolar disorder because her mood was

anxious, "she reported (and acted in response to) OCD features," and she "holds a jaundiced

opinion of others, being given to anger outbursts." (*Id.*). Dr. Virgil assessed plaintiff's

functional abilities as follows: (1) she is able to understand and carry out instructions; (2) her

attention and concentration skills are adequate; (3) although she was cooperative during the

session, "she presents with bipolar and personality disorder features and probably is not

amenable to supervision," and she would not "sustain adaptive interactions with co workers";

and (4) "because of the effects of the bipolar and personality disorder features, [plaintiff]

probably would not respond appropriately to work setting pressures." (Tr. 219).

---

[3] The GAF scale rates an individual's "overall psychological functioning" from 0 to 100 at a given moment in time. Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 34. This scale is meant to reflect an individual's "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Id*. An individual with a score of 51-60 is classified as having "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." *Id.* at 32.

Consultative examining psychologist Dr. Carver evaluated plaintiff on July 26, 2012, and completed a report dated August 6, 2012. (Tr. 443-48). Plaintiff described her mental state to Dr. Carver as similar to a "roller coaster" with "[s]o much anger and so much depression." (Tr. 443). She related that she has homicidal thoughts about people and that she "can't take the looks of other people." (*Id*.). Plaintiff reported that she had always experienced mood swings with periods of exhilaration and anger. She stated that she cannot "function correctly in public." (*Id*.). At the time of the evaluation, plaintiff was under the care of a doctor, she was taking Depakote and Celexa, and she was waiting to see a therapist who would take her insurance. (*Id*.). Plaintiff described hypomanic episodes occurring about once a month and lasting two days during which she will shop and spend money she does not have, create projects, bake and cook, "get real happy," and not sleep. (Tr. 444). After the episodes, she "crashes and becomes depressed" and needs help from her mother-in-law with cleaning and caring for her children. (*Id*.). During these periods, she cries and eats a great deal. She described having aggressive thoughts and fantasizing about harming others. (Tr. 444-45). Her daily activities largely consist of caring for her children and performing chores as she is able with frequent help from her husband and mother. (Tr. 445). Plaintiff reported that she is "a very secluded person" and she does not have friends. (*Id*.). She denied symptoms associated with obsessive-compulsive disorder and any suicidal thoughts over the past five years. (Tr. 446).

Dr. Carver found that plaintiff is "clinically hypomanic." (*Id*.). He reported that her affect was "somewhat labile" and her mood was hypomanic as evidence by her "pressured, talkative, rambling, and colorful" speech, her "theatrical and histrionic" presentation," and her high energy level. (Tr. 446, 447). Her thought process was "tangential and digressive." (Tr. 447). Her orientation was intact but her insight and judgment were "impaired by her psychiatric status."

9

(*Id.*). Dr. Carver found that plaintiff put forth a valid effort during the examination and there was no indication of "exaggeration, falsification, or malingering." (*Id.*). Dr. Carver administered the Minnesota Multiphasic Personality Inventory-2 "without difficulty" but the results were invalidated by an "extreme elevation" of the F scale, which he explained occurs when the individual is "endorsing an excessive number of symptoms in multiple clinical areas"; the individual feels she is "overwhelmed and 'falling apart' in a psychiatric sense"; or the individual is exaggerating her illness and engaging in purposeful malingering. (*Id.*). Dr. Carver found that the elevated F scale in plaintiff's case was likely related to her "hypomanic mood and exaggerated behaviors." (*Id.*). Dr. Carver noted that plaintiff was being treated by her family physician for her mental impairments; however, he concluded that plaintiff's current minimal medication dosage was not controlling her hypomanic episodes and that she was not a candidate for employment at the time of his evaluation due to "her wide mood swings between hypomania and depression." (*Id.*). He opined that psychiatric treatment could possibly restore her ability to function in the community and increase her potential for gainful employment. (*Id.*).

Dr. Carver attached a Medical Functional Capacity Assessment to his report. (Tr. 449). Dr. Carver opined that plaintiff had moderate limitations in the following abilities: understand and remember detailed instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (*Id.*). Dr. Carver opined that plaintiff had marked limitations in the following abilities: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted

by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*).

The ALJ stated that he was giving "moderate level weight" to Dr. Virgil's opinion. (Tr. 19). The ALJ in fact assigned different levels of weight to what he termed Dr. Virgil's "objective findings" and Dr. Virgil's "comments," the latter actually being Dr. Virgil's assessment of plaintiff's functional limitations. (*Id.*). The ALJ gave "great weight" to Dr. Virgil's objective findings that plaintiff's thought content was logical and coherent; she seemed to relate in an appropriate manner during his clinical interview; there was no evidence of delusions or hallucinations; insight and judgment were adequate; and there was no evidence of any concentration deficits. (*Id.*). The ALJ also gave "great weight" to Dr. Virgil's findings that plaintiff had "adequate attention and concentration and that she was able to understand and carry out instructions." (*Id.*). The ALJ gave "little weight" to Dr. Virgil's findings that plaintiff was not "amenable to supervision"; she could not interact with coworkers; and she "probably would not respond appropriately to work pressures." (*Id.*). The ALJ discounted these findings assessing plaintiff's mental functioning for the following reasons:

> These comments appear to be based upon [plaintiff's] subjective complaints that she 'hate[s] people' and that she cannot be around others. The claimant's dislike of social interaction seems volitional in nature. She does not have any loss of contact with reality or any symptoms of psychosis that would interfere with her ability to conform her conduct to socially appropriate standards. Her complaints of irritability and difficulty getting along with others are not based upon an inability to do so, but rather a preference not to do so which does not rise to the level of disability.

(*Id.*).

11

The ALJ also discounted the opinion of examining psychologist Dr. Carver, assigning the opinion "little weight." (Tr. 19). The ALJ stated that Dr. Carver completed a consultative psychological evaluation in which the psychologist noted that plaintiff was "somewhat manic" during his examination. (*Id.*, citing Tr. 441-449). The ALJ found, however, that Dr. Carver did not make "any detailed findings related to [plaintiff's] level of psychological functioning" and his conclusion that plaintiff "is not a candidate for employment" is one that "invades the province of the Commissioner." (Tr. 19).

Instead of crediting the opinions of the examining psychologists, the ALJ gave "great weight" to the opinions of the non-examining state agency psychologists, Drs. Frank Orosz, Ph.D. and Dr. Carl Tishler, Ph.D. (*Id.*). Drs. Orosz and Tishler reviewed the record and prepared assessments dated May 1, 2012 and November 16, 2012, respectively. (Tr. 55-64, 71-76). They assessed mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration. (Tr. 59, 71). They opined that due to plaintiff's anxiety levels and difficulties with social interactions, she would be better able to perform simple and repetitive tasks with no strict production quotas, in a relatively static environment, and in a nonpublic environment with infrequent social interaction. (Tr. 61-62, 75-76). The ALJ found that the restrictions limiting plaintiff to jobs involving simple routine tasks with limited social interaction and no strict production quotas were "consistent with the medical evidence of record as a whole, including the signs and findings on evaluations and the claimant's own reports of functioning" as detailed earlier in the ALJ's opinion. (Tr. 19).

The ALJ's decision to credit the opinions of the non-examining psychologists over the opinions of the examining psychologists is not supported by substantial evidence. In discounting

Dr. Virgil's assessment, the ALJ impermissibly substituted his non-expert judgment for Dr.

Virgil's medical judgment and made irreconcilable findings. *See Simpson v. Comm'r of Soc.*

*Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009) ("ALJs must not succumb to the temptation to play

doctor and make their own independent medical findings") (citation omitted); *Smiley v. Comm'r*

*of Soc. Sec.,* 940 F. Supp.2d 592, 600 (S.D. Ohio 2013) (ALJ may not substitute his own

"medical" opinion for that of examining or treating physician). *See also McCain v. Director,*

*Office of Workers Compensation Programs,* 58 F. App'x 184, 193 (6th Cir. 2003) ("[A]n ALJ is

not free to set his own expertise against that of a physician who presents competent evidence.")

(citing *Peabody Coal Co. v. Dir., OWCP,* 778 F.2d 358, 362-63 (7th Cir. 1985) ("In weighing

medical evidence to evaluate the reasoning and credibility of a medical expert, however, the ALJ

may not exercise 'absolute discretion to credit and discredit the expert's medical evidence.'");

*Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and

interpreting the laboratory reports the ALJ impermissibly substitute[s] his own judgment for that

of a physician; an ALJ is not free to set his own expertise against that of a physician who

presents competent evidence.")).  Dr. Virgil diagnosed plaintiff with bipolar disorder, anxiety

disorder, obsessive compulsive disorder, and personality disorder.  (Tr. 218).  Dr. Virgil assessed

plaintiff with functional limitations resulting from these mental impairments.  Dr. Virgil opined

that plaintiff "present[ed] with bipolar and personality disorder features" that likely would

preclude her from being amenable to supervision, from "sustain[ing] adaptive interactions with

co workers," and from "respond[ing] appropriately to work setting pressures." (Tr. 219).  The

ALJ accepted that the mental conditions Dr. Virgil diagnosed constituted severe mental

impairments.  (Tr. 13).  Yet, the ALJ discounted the symptoms Dr. Virgil documented in his

evaluation on the ground plaintiff chose to experience the symptomatology of her severe mental

13

impairments. The ALJ did not offer a reasonable explanation for finding the symptoms of plaintiff's severe mental impairments to be a choice of her making. (Tr. 19). To the contrary, the ALJ relied on nothing more than his unsupported beliefs in making this finding and discounting Dr. Virgil's conflicting medical opinion. The ALJ opined that it "seem[ed]" to be plaintiff's choice and preference to dislike social interaction and to have difficulty getting along with others. (Tr. 19). The ALJ theorized that plaintiff chose to experience these difficulties because she did not have symptoms of "loss of contact with reality or any symptoms of psychosis that would interfere with her ability to conform her conduct to socially appropriate standards." (Tr. 19). The ALJ's reasoning does not "build an accurate and logical bridge" between the evidence and his conclusion that plaintiff seemed to prefer to suffer the symptoms of her mental illness. *See Fleischer v. Astrue,* 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)). The ALJ cited no medical or other evidence to support his theory that an individual with severe mental impairments who does not suffer from psychotic-type symptoms cannot otherwise be functionally limited in her ability to ability to interact with others. Absent supporting evidence, the ALJ's theory cannot trump Dr. Virgil's conflicting psychological evaluation, in which Dr. Virgil acknowledged that plaintiff did not "present with psychotic disorder symptoms" but nonetheless was functionally limited in her ability to interact with others and respond appropriately to work pressures. (Tr. 217).

Further, the ALJ's finding that plaintiff's mental symptomatology was a preference rather than a manifestation of her severe mental impairments cannot be reconciled with other evidence that the ALJ credited. The ALJ gave "great weight" to the opinions of state agency reviewing psychologist Dr. Orosz. (Tr. 19). Dr. Orosz found that plaintiff's statements regarding her mental health symptoms were "fully credible," and Dr. Orosz fully credited Dr. Virgil's opinion

14

and his conclusions as coinciding with his objective findings. (Tr. 60). Dr. Virgil opined that plaintiff "did not appear to exaggerate symptoms or otherwise respond in a manner suggesting self report unreliability." (Tr. 218). No other mental health source of record opined that plaintiff was malingering or provided evidence to show that the symptoms of plaintiff's severe mental impairments are within her control. The ALJ substituted his non-expert judgment for that of Dr. Virgil by ignoring the opinions of the mental health experts that plaintiff's symptoms coincided with the objective findings and simply theorizing that plaintiff chose or preferred to suffer the symptoms of her severe mental impairments. Under these circumstances, the ALJ's decision to accord Dr. Virgil's assessment of functional restrictions "little weight" is not substantially supported.

The ALJ's decision to give "little weight" to the opinion of Dr. Carver likewise is not supported by substantial evidence. (Tr. 19). The Commissioner concedes that the ALJ's decision does not specifically address the Medical Functional Capacity Assessment attached to Dr. Carver's report. (Doc. 19 at 6). The Commissioner nonetheless alleges that the ALJ's failure to consider Dr. Carver's detailed assessment was harmless error because Dr. Carver opined in the assessment that the expected duration of plaintiff's limitations was no more than 11 months. (*Id.* at 7). The Commissioner alleges that because an impairment must last at least 12 consecutive months to be disabling, Dr. Carver's assessment indicating that plaintiff's functional limitations could be expected to last at most 11 months could not have affected "any reasonable ALJ's assessment of Plaintiff's work-related functioning for a relevant period." (*Id.*, citing 20 C.F.R. § 404.1520(c)).[4] The Commissioner further argues that the ALJ was not bound to accept Dr. Carver's opinion that plaintiff was "not a candidate for employment" at the time of his

---

[4] Section 404.1520(c) states: "You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. . . ." 20 C.F.R. § 404.1520(c).

evaluation because this is an issue reserved to the Commissioner. (*Id.* at 7, citing Tr. 447).

Finally, the Commissioner argues that the ALJ was not required to go beyond acknowledging

that Dr. Carver's report described "somewhat hypomanic behavior" because the ALJ reasonably

concluded that Dr. Carver did not explain how that behavior affected plaintiff's long-term

functioning and instead reasonably relied on the opinions of the non-examining psychologists

and other evidence of plaintiff's adequate social functioning. (*Id.* at 7-8).

The Commissioner correctly asserts that the ALJ was not required to accept Dr.

Carver's opinion that plaintiff was not able to be employed as of the date of his evaluation due

to "her wide mood swings between hypomania and depression." (Tr. 447). *See* 20 C.F.R. §

404.1527(d)(1) (opinions on whether an individual is disabled are reserved to the

Commissioner). *See also Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)

("The determination of disability is ultimately the prerogative of the Commissioner, not the

treating physician.") (citation and brackets omitted). The Commissioner also correctly states

that an impairment must have lasted or be expected to last for a continuous period of at least

twelve months to be considered disabling. *See Boulis-Gasche v. Comm'r of Soc. Sec.,* 451

F. App'x 488, 493 (6th Cir. 2011) (citing 20 C.F.R. § 404.1509). However, it does not

follow that the ALJ was free to ignore the Medical Functional Capacity Assessment attached to

Dr. Carver's opinion, especially where the subsequent medical evidence shows that plaintiff's

mental impairments continued to be severe beyond the eleven-month time frame initially

predicted by Dr. Carver (*see,* e.g., Tr. 351-52). 20 C.F.R. § 404.1545(a)(3) ("We will assess

your residual functional capacity based on all of the relevant medical and other evidence."). In

arguing otherwise, the Commissioner ignores the fact that the evidence the ALJ failed to

discuss was a medical source opinion. The ALJ was *required* to evaluate this opinion in

16

accordance with the regulatory factors.  *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source,

we will evaluate every medical opinion we receive.").  *See also Karger v. Commissioner of*

*Social Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011) (ALJ's failure to mention the medical

expert's opinion violated the regulatory requirement currently found at 20 C.F.R. §

416.927(e)(2)(ii) which provides: "Unless the treating source's opinion is given controlling

weight, the [ALJ] must explain in the decision the weight given to the opinions of a State

agency medical or psychological consultant or other program physician or psychologist, as the

administrative law judge must do for any opinions from treating sources, nontreating sources,

and other nonexamining sources who do not work for us.").  The Commissioner also ignores

the fact that the evidence the ALJ neglected to consider is a mental functional capacity

assessment which bears directly on the issue of whether there was substantial evidence in the

record showing that plaintiff retained the mental RFC to work.  Finally, in discounting Dr.

Carver's opinion, the ALJ relied on the purported absence of the precise type of findings made

by Dr. Carver in the assessment - "detailed findings relating to the claimant's level of

psychological functioning." (Tr. 19).  The ALJ's failure to consider this evidence of plaintiff's

mental functioning cannot be considered harmless error.

     The Commissioner argues that the ALJ nonetheless reasonably credited the opinions of

the non-examining state agency psychologists over the opinions of the examining psychologists

because the evidence of record showed adequate social functioning.  The ALJ gave the

reviewing psychologists' opinions "great weight" because the restrictions they assessed were

"consistent with the medical evidence of record as a whole, including the signs and findings on

evaluations and the claimant's own reports of functioning" as set forth earlier in the ALJ's

opinion. (Tr. 19).  The Commissioner argues that the Court is not free to reweigh conflicting

evidence considered by the ALJ.  (Doc. 19 at 7-8, citing *Haun v. Comm'r of Social Sec.,* 107 F.

App'x 462, 465 (6th Cir. 2004) (reviewing court may not reweigh conflicting evidence on appeal

but instead must affirm ALJ's decision if it is supported by substantial evidence). *See also*

*Kornecky v. Comm'r of Social Security*, 167 F. App'x 496, 508 (6th Cir. 2006).  The Sixth

Circuit in *Kornecky* explained:

> An ALJ can consider all the evidence without directly addressing in his written
> decision every piece of evidence submitted by a party.  Nor must an ALJ make
> explicit credibility findings as to each bit of conflicting testimony, so long as his
> factual findings as a whole show that he implicitly resolved such conflicts.

*Id.* (quoting *Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)

(citations and internal quotation marks omitted)).

Here, though, the ALJ provided no indication in his written decision that he considered

all of the evidence.  Neither do the ALJ's factual findings as a whole show that the ALJ

implicitly resolved conflicts in the evidence.  To the contrary, it appears the ALJ ignored the

evidence of marked and moderate limitations provided by Dr. Carver rather than addressing

whether those limitations were supported by the evidence and resolving the apparent conflicts

between Dr. Carver's findings and the opinions of the state agency reviewing psychologists.  The

ALJ failed to comply with the governing regulations by neglecting to consider Dr. Carver's

detailed functional assessment of plaintiff's mental functioning.  *See* 20 C.F.R. §§

404.1545(a)(3), 404.1527(c), 416.927(e)(2)(ii).  Although an ALJ is not obligated "to discuss

every piece of medical opinion evidence," the ALJ here did not discuss sufficient evidence to

allow the Court to find the non-disability finding is substantially supported.  *See Karger*, 414 F.

App'x at 753.

The ALJ erred in weighing the medical opinion evidence related to plaintiff's mental

impairments.  The ALJ impermissibly substituted his "medical" judgment for that of Dr. Virgil

18

when rejecting the functional limitations the examining psychologist assessed; failed to address examining psychologist Dr. Carver's Medical Functional Capacity Assessment; and credited the opinions of the non-examining state agency psychologists over the opinions of the examining psychologists for reasons that are not substantially supported by the record.

Plaintiff's sole assignment of error should be sustained.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including consideration and reevaluation of the opinions of the mental health sources of record, reassessment of plaintiff's mental RFC, and additional vocational testimony as warranted, consistent with this decision.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 6/20/16

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CORRINA RUTH MULLINS,                                    Case No. 1:15-cv-311
      Plaintiff,                                          Dlott, J.
                                                       Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.   Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).